AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
10/21/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___RYO___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/21/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___clee___ DEPUTY

United States of America

v.

SHANE PRUKOP,

Defendant.

Case No. 2:25-mj-06516-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about September 10, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

/s/
Complainant's signature

Jannah R. Holden, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: October 21, 2025

City and state: Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
Printed name and title

AUSA: Yervant P. Hagopian x0732

**AFFIDAVIT**

I, Jannah R. Holden, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.  This affidavit is made in support of a criminal complaint against, and arrest warrant for, Shane PRUKOP ("PRUKOP") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

2.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only, all amounts are approximate, and all dates and times are on or about those indicated.

### II. BACKGROUND OF AFFIANT

3.  I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), an agency within the U.S. Department of Homeland Security and have been so employed since September 2020.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, and have completed the ATF National Academy's Special Agent Basic

Training course.  I am currently assigned to the ATF Los Angeles Division, Glendale Field Office, in Glendale, California.

4. I received a Bachelor of Science degree in Criminal Justice from Old Dominion University in Norfolk, Virginia, and a Master of Science Degree in Criminology from Boston University in Boston, Massachusetts.  I served in the United States Navy and honorably separated in 2004 at the rank of Petty Officer Second Class.  I thereafter worked for seven years with the Federal Bureau of Investigation in Norfolk, Virginia and Los Angeles, California.  Prior to becoming a Special Agent with ATF, I served as a Special Agent with the Naval Criminal Investigative Service for approximately three years.

5. During my tenure as an SA at ATF, I have received training in federal firearms and drug laws, drug identification, confidential source handling, and various surveillance and investigative techniques.  I regularly refer to these laws and regulations during the course of my duties and have written and participated in the execution of several federal search and arrest warrants relating to violations of these laws.  I have participated in many aspects of criminal investigations including conducting physical and electronic surveillance of individuals committing crimes of violence and narcotics trafficking, as well as prohibited persons in possession of firearms.

## III. STATEMENT OF PROBABLE CAUSE

6. Based on my review of law enforcement reports, my conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

7. On September 10, 2025, a law enforcement officer from the Ventura County Sheriff's Office ("VCSO") saw PRUKOP speaking to another man on a sidewalk in Ventura, California. PRUKOP was fidgety, sweaty, exhibited an unkempt appearance, and entered and exited a nearby car several times. VCSO officers stopped PRUKOP based on suspicion that PRUKOP was under the influence of a controlled substance. PRUKOP said he had done drugs "a little while ago" and "a month or two" ago. VCSO officers began a Drug Abuse Recognition evaluation and observed that PRUKOP had bloodshot eyes, dilated pupils, a rapid pulse rate and a false estimation of time. Accordingly, VCSO officers arrested PRUKOP for being under the influence of a controlled substance in violation of California law.

8. Officers read PRUKOP his Miranda rights. PRUKOP waived his rights and acknowledged that there were two methamphetamine pipes inside his car and a 3D printer. Further, PRUKOP indicated that he had a firearm in a storage unit in Oxnard, California and consented for VCSO to search that unit.

9. VCSO searched PRUKOP's car and found several rounds of .22 caliber ammunition, a baton, pepper spray, and a 3D printer. VCSO also searched the trailer that PRUKOP's car was towing and found the following:

      a.   150 rounds of .22 caliber Nosler Expansion Tip ammunition;

      b.   2 boxes of Steelhead monolit 32 solid steel slug 12-gauge ammunition;

      c.   A box of Keviar slug 12-gauge frangible ammunition;

      d.   2 boxes of .22 Remington long rifle brass-plated ammunition;

      e.   A box of .22 caliber federal 40 grain ammunition;

      f.   10 boxes of Winchester .223 55-grain full metal jacket ammunition;

      g.   Various rounds of 9mm ammunition; and

      h.   2 ammunition cans.

10. PRUKOP acknowledged that he was transporting the ammunition inside his trailer to his storage unit.

11. Inside PRUKOP's storage unit, VCSO found a gun safe, a 3D-printed P80 ghost gun, and a 9mm magazine with live rounds. The storage unit was registered to PRUKOP and VCSO accessed the storage unit using PRUKOP's key.

12. VCSO again advised PRUKOP of his <u>Miranda</u> rights and rights pertaining to urine samples. PRUKOP provided a urine sample, which confirmed he was under the influence of methamphetamine. PRUKOP acknowledged that he sustained a felony conviction about 25 years ago and that he previously manufactured ammunition and two firearms.

13. The next day, VCSO executed a search warrant at PRUKOP's storage unit and found the following:

    a. Several rounds of loose ammunition;

    b. 10 12-gauge shotgun rounds;

    c. 6 9mm magazines;

    d. A black .22 caliber magazine with live rounds;

    e. 2 blue 9mm magazines with live rounds;

    f. 2 black 9mm magazines;

    g. A black AR pistol;

    h. A black and gray AR pistol;

    i. A black and red AR pistol with a sling and suppressor;

    j. A black and gray AR pistol equipped with a laser;

    k. A black sawed-off shotgun;

    l. A black AR pistol with no buffer tube;

    m. A blue and black P80 ghost gun;

    n. A black P80 ghost gun;

    o. A black and grey P80 ghost gun;

    p. A gray 3D-printed Tauris handgun with serial number ADD172130; and

    q. Body Armor Vests.

 14. On September 12, 2025, VCSO again read PRUKOP his <u>Miranda</u> rights. PRUKOP acknowledged that several guns and ammunition inside his storage unit belonged to him and that he manufactured nine or ten guns. PRUKOP said that everything in the storage unit belonged to him.

 15. On October 8, 2025, ATF SA Chris Stantzos examined reports and documents pertaining to the foregoing ammunition and made the following identifications and determinations:

  a. 10 rounds of 12-Gauge ammunition marked "WINCHESTER 12GA" were manufactured in Illinois or Mississippi.

  b. 24 rounds of .22 caliber ammunition marked "F" were manufactured in Minnesota or Idaho.

  c. 10 rounds of 9mm Luger caliber ammunition marked "*-* 9mm LUGER" were manufactured in Missouri.

  d. 7 rounds of 9mm Luger caliber ammunition marked "WMA 23" NATO were manufactured in Illinois or Mississippi.

  e. 20 rounds of 12 Guage ammunition marked "12 *" in boxes labeled "DDUPLEKS" were manufactured in Latvia.

  f. 187 rounds of .223 caliber ammunition marked "LC 223 REM" were manufactured in Missouri.

  g. 8 rounds of 9mm Luger caliber ammunition marked "*-* 9mm LUGER" were manufactured in Missouri.

  h. 213 rounds of 9mm Luger caliber ammunition marked "LC 223 REM" were manufactured in Missouri.

  i. 121 rounds of 9mm Luger caliber ammunition marked "*-* 223 REM" were manufactured in Missouri.

  j. 70 rounds of 9mm Luger caliber ammunition marked "NOSLER 223 REM" were manufactured in Oregon.

  k. A sample of 300 unmarked bullets/projectiles contained in three boxes labeled "Lehigh Defense" and ".355 Cal Xtreme Defense 90gr" were manufactured in Texas and Arkansas.

16. Since VCSO recovered the foregoing ammunition in California, the ammunition necessarily moved in interstate or foreign commerce.

17. I have reviewed PRUKOP's criminal history and determined that he sustained a felony conviction for Robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Lassen, case number 200210131 on April 15, 2002.

## IV. CONCLUSION

18. For all of the reasons described above, there is probable cause to believe that PRUKOP has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

\_\_/s/_____
Jannah R. Holden, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed to and sworn before me this 21st day of October, 2025.

HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE